RECEIPT # 66556
AMOUNT $ 250
SUMMONS ISSUED 4-1
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. [illegible]
DATE 8-31-05

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| STONEWALL INSURANCE COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. |
| SWISS REINSURANCE AMERICA CORPORATION, | ) | |
| Defendant. | ) | |

05 CV 11797 MLW

MAGISTRATE JUDGE Bowler

## COMPLAINT

Plaintiff, Stonewall Insurance Company ("SICO"), by and through its counsel, and for its Complaint against Swiss Reinsurance America Corporation ("SRAC"), states as follows:

## PARTIES

1. Plaintiff is a Rhode Island corporation with its principal place of business in Massachusetts.

2. Defendant is a New York corporation with its principal place of business in New York. Defendant is successor to North American Reinsurance Corporation (defendant and its predecessor collectively are referred to herein as SRAC).

## PRELIMINARY STATEMENT

3. SICO seeks declaratory relief and damages due to SRAC's failure and refusal to pay over $1.1 million owed to SICO under two facultative reinsurance certificates.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties' citizenship is diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over SRAC because SRAC regularly does business within this judicial district.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

**BACKGROUND**

7. SRAC participated in the reinsurance of insurance policies issued by SICO to Studebaker-Worthington, Inc. ("S-W") under facultative reinsurance contracts.

8. SICO issued policy number 33000113 and policy number 36000002 to S-W (the "S-W Policies"). Copies of the S-W Policies are attached hereto and incorporated herein as Exs. A and B.

9. SRAC reinsured policy no. 33000113 under facultative reinsurance certificate number 22187, and reinsured policy no. 36000002 under facultative reinsurance certificate number 336292. Copies of these certificates are attached hereto and incorporated herein as Exs. C and D.

10. SICO has paid in excess of $5 million dollars in indemnity for asbestos bodily injury claims under the Policies.

11. SICO has billed SRAC a total of $510,730.62 under certificate number 22187, and has billed SRAC a total of $615,984.60 under certificate number 336292.

12. SRAC has refused to pay any of the $1,126,715.22 billed under these certificates.

**COUNT I**

**Declaratory Judgment**

13. SICO incorporates paragraphs 1-12 above as if fully set forth in this paragraph 13.

14. SICO has repeatedly demanded that SRAC pay the amount billed under certificate number 22187, but SRAC has refused to do so. Therefore, there is an actual controversy between the parties regarding SRAC's obligation to pay this amount.

15. SRAC is obligated to pay the amount billed under certificate number 22187.

WHEREFORE, Stonewall Insurance Company prays that this Court enter a judgment declaring Swiss Reinsurance America Corporation is obligated to pay the $510,730.62 billed under certificate number 22187, and grant Stonewall Insurance Company such other relief in its favor as is just and proper.

**COUNT II**

**Breach of Contract**

16. SICO incorporates paragraphs 1-15 above as if fully set forth in this paragraph 16.

17. SRAC's failure and refusal to pay the $510,730.62 billed to it under facultative certificate number 22187 is a breach of that contract.

18. SICO has fully performed all of its obligations under facultative certificate number 22187.

WHEREFORE, Stonewall Insurance Company prays that this Court (a) enter judgment in favor of Stonewall Insurance Company and against Swiss Reinsurance America Corporation in the amount of $510,730.62, plus interest, costs and attorneys fees, and (b) grant Stonewall Insurance Company such other and further relief as is just and proper.

**COUNT III**

**Declaratory Judgment**

19. SICO incorporates paragraphs 1-18 above as if fully set forth in this paragraph 19.

20. SICO has repeatedly demanded that SRAC pay the amount billed under certificate number 336292, but SRAC has refused to do so. Therefore, there is an actual controversy between the parties regarding SRAC's obligation to pay this amount.

21. SRAC is obligated to pay the amount billed under certificate number 336292.

WHEREFORE, Stonewall Insurance Company prays that this Court enter a judgment declaring Swiss Reinsurance America Corporation is obligated to pay the $615,984.60 billed under certificate number 336292, and grant Stonewall Insurance Company such other relief in its favor as is just and proper.

**COUNT IV**

**Breach of Contract**

22. SICO incorporates paragraphs 1-21 above as if fully set forth in this paragraph 22.

23. SRAC's failure and refusal to pay the $615,984.60 billed to it under facultative certificate number 336292 is a breach of that contract.

24. SICO has fully performed all of its obligations under facultative certificate number 336292.

WHEREFORE, Stonewall Insurance Company prays that this Court (a) enter judgment in favor of Stonewall Insurance Company, and against Swiss Reinsurance America Corporation, in the amount of $615,984.60, plus interest, costs and attorneys fees, and (b) grant Stonewall Insurance Company such other and further relief as is just and proper.

Respectfully submitted,

STONEWALL INSURANCE COMPANY
By its attorneys

Kevin J. O'Connor, BBO #555248
Michael S. Batson, BBO #648151
HERMES, NETBURN, O'CONNOR,
& SPEARING, P.C.
111 Devonshire Street
Boston, MA 02109-5407
(617) 728-0050
(617) 728-0052 - fax

Dated: August 31, 2005

G:\DOCS\KJO\Cavell\Swiss Re DJ\Pleadings\Complaint.doc



STONEWALL INSURANCE COMPANY
[illegible]NDABLE INSURANCE [illegible] INC.

No. 33 000113

[illegible] INFORMATION

[illegible]ERWRITING INFORMATION

| CO. | CONTRACT # | SUB LINE | CLASS | [illegible] | G/A COMM. | BRK'S COMM. | PRODUCER | STATE | [illegible] |
|---|---|---|---|---|---|---|---|---|---|
| [illegible] | [illegible] | | [illegible] | [illegible] | [illegible] | 12.5 | [illegible] | [illegible] | [illegible] |

Producer: [illegible]

In favor of: [illegible] AL. ([illegible])

Address: [illegible]

Type of Coverage: [illegible]

In the amount of: $1,000,000.00

Term: Beginning at 12:01 A.M. on the [illegible] day of [illegible] 1974
and ending at 12:01 A.M. on the [illegible] day of [illegible] 1975
Standard time at the place of location of risks insured, and in accordance with terms and conditions of the form(s) attached and the Standard Clauses on the reverse side of this page.

Forms: At time of issuance this Policy contains a 4 page insuring Form and Endorsements 1 through 3 inclusive. Standard Clause [illegible] shall not apply.

SURPLUS LINES INFORMATION

CROSS REFERENCES

Premium Due:

| | At Inception | 1st Anniversary | 2nd Anniversary |
|---|---|---|---|
| PREMIUM | $68,000.00 | $ | $ |
| State Tax | $ | $ | $ |
| Stamping Fee | $ | $ | $ |
| Service Fee | $ | $ | $ |
| Policy Fee | $ | $ | $ |
| TOTAL | $68,000.00 | | |

ANNIV. REVIEW
ADL.
INST.
ENTER FIRE
ENTER QUAKE

Dated at ATLANTA, GEORGIA
this 23RD day of JANUARY 19 74

RECEIVED FEB 27 1974

TO DATA PROCESSING
MAR 1 1974
FROM ACCOUNTING

HOME OFFICE COPY

8W

IT IS UNDERSTOOD AND AGREED THAT NO COVERAGE IS AFFORDED UNDER THIS POLICY IN RESPECT TO WORKMEN'S COMPENSATION IN THE STATE OF CALIFORNIA.

IN CONSIDERATION OF THE ABOVE IT IS UNDERSTOOD AND AGREED THAT ITEM 5. AGGREGATE INSURANCE SUBSECTION (A) "RETENTION", OF THE SCHEDULE FORMING PART OF THIS POLICY, WILL BE REDUCED BY THE LOSSES APPLICABLE TO WORKMEN'S COMPENSATION IN THE STATE OF CALIFORNIA.

SIGNED AND ACCEPTED P L Crafts Jr
NAMED INSURED

All other Terms and Conditions remain unchanged.

Attached to and Forming Part of Policy No. 33000113

Issued To: STUDEBAKER-WORTHINGTON, INC., ET AL

Effective Date: JANUARY 1, 1974

Endorsement No.: 6

STONEWALL INSURANCE COMPANY

By Robert M. [illegible]

GLA 12E(99)E474

ENDORSEMENT 1

IN CONSIDERATION OF THE PREMIUM CHARGED IT IS AGREED THAT ITEM 5 (A), RETENTION, WILL NOT INCLUDE LOSS PAID BY THE BASIC INSUROR TO THE EXTENT SUCH LOSS ARISES OUT OF:

1) AIRCRAFT OR MISSILE PRODUCTS.

2) DAMAGE TO PROPERTY OF OTHERS UNDER BAILMENT TO ANY INSURED.

3) VIOLATION OF NORMAL OR CUSTOMARY TRADE PRACTICES.

4) BREACH OF EXPRESS OR IMPLIED WARRANTY OF FITNESS OF PURPOSE OR EXPRESS OR IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE.

All other Terms and Conditions remain unchanged.

Attached to and Forming Part of Policy No. 33000112

Issued to: STUDEBAKER-WORTHINGTON, INC., ET AL. (SEE SCHEDULE)

Dated at: ATLANTA, GEORGIA

Date: JANUARY 23, 1974

DEPENDABLE INSURANCE ASSOCIATES, INC.

By______________________________

D-6

HOME OFFICE COPY

# MANDATORY EXCLUSIONS AND CONDITIONS

ENDORSEMENT NO. 2 EFFECTIVE: AT INCEPTION

I. It is agreed that:

A. As respects all operations, this policy does not apply to liability for:

1. The discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, solids, liquids or gases, waste materials, or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water unless such discharge, dispersal, release or escape is sudden or accidental.
2. Fines, penalties, punitive or exemplary damages.

B. As respects oil or other petroleum operations over water, this policy does not apply to liability for:

1. Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination.
2. The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances.
3. Loss of, damage to, or loss of use of property directly or indirectly resulting from subsidence caused by subsurface operations of the Insured.
4. Removal of, loss of or damage to subsurface oil, gas or any other substance, the property of others.

C. As respects oil or other petroleum operations on land only, this policy does not apply to liability for:

1. Removal of, loss of or damage to subsurface oil, gas or any other substance, the property of others, provided always that this paragraph (C1) shall not apply to any liability which would otherwise be covered under this Insurance for such removal, loss, or damage directly attributable to blow-out, cratering or fire of an oil or gas well owned or operated by, or under the control of, the Insured.
2. Loss of, damage to, or loss of use of property directly or indirectly resulting from subsidence caused by subsurface operations of the Insured.
3. Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination, resulting from the discharge, dispersal or release, or escape of any substance into or upon any watercourse or body of water.
4. Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination other than as described in Paragraph (C3) above, provided always that this Paragraph (C4) shall not apply to liability for Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of use of such property damaged or destroyed where such seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.
5. The cost of removing, nullifying or cleaning-up seeping, polluting or contaminating substances unless the seepage, pollution, or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.

II. CANCELLATION FOR NON PAYMENT OF PREMIUM

It is agreed that irrespective of any other terms or conditions contained in this policy or endorsements attached thereto, this policy may be cancelled by the company, or by Dependable Insurance Associates, Inc., in their behalf, for Non-Payment of any unpaid portion of the premium by delivering to the insured or by sending to the insured by mail, registered or unregistered, at the insured's address as shown herein, not less than ten days written notice stating when the cancellation shall be effective.

All other terms and conditions remain unchanged.

Attached to and Forming a Part of Policy No. 33000112

Issued to: STUDEBAKER-WORTHINGTON, INC., ET AL.

Dated at: ATLANTA, GEORGIA

Date: JANUARY 23, 1974

DEPENDABLE INSURANCE ASSOCIATES, INC.

By ______________________

STONEWALL INSURANCE COMPANY
BIRMINGHAM, ALABAMA

# POLICY OF AGGREGATE INSURANCE

## SCHEDULE

1. INSURED: STUDEBAKER-WORTHINGTON, INCORPORATED AND ALL SUBSIDIARIES OR DIVISIONS AS MAY NOW OR HEREAFTER BE CONSTITUTED.

2. ADDRESS: c/o ARMISTEAD, MILLER & WALLACE
NASHVILLE, TENNESSEE

3. EFFECTIVE DATE: JANUARY 1, 1974

4. EXPIRATION DATE: JANUARY 1, 1975

5. AGGREGATE INSURANCE:

   (A) RETENTION: 2,600,000.00 (See End# 4) ~~$3,100,000.00~~ TO BE ADJUSTED ON GROSS REVENUE, THE SPECIFIC RATE TO BE AGREED

   (B) INSURANCE LIMIT: 11,000,000.00 ~~$1,000,000.00~~

   (C) LOSS LIMITATION PER OCCURRENCE: $100,000 EA OCCURR, GENERAL LIABILITY AND
   100,000 EA OCCURR, AUTOMOBILE LIABILITY AND
   100,000 EA OCCURR, WORKMEN'S COMPENSATION

6. PREMIUM: $68,000.00 FLAT ANNUAL

7. BASIC INSURANCE CARRIER OR SERVICE COMPANY: INSURANCE COMPANY OF NORTH AMERICA
   (1) COMPREHENSIVE GENERAL - AUTOMOBILE LIABILITY POLICY

   (2) WORKMEN'S COMPENSATION AND EMPLOYER'S LIABILITY POLICY

STONEWALL INSURANCE COMPANY
BIRMINGHAM, ALABAMA

# POLICY OF AGGREGATE INSURANCE

THIS IS A POLICY OF AGGREGATE INSURANCE ISSUED BY THE STONEWALL INSURANCE COMPANY (HEREIN CALLED THE COMPANY) TO THE PARTY OR PARTIES NAMED IN THE DECLARATIONS MADE A PART HEREOF (HEREIN CALLED THE INSURED).

WHEREAS, CERTAIN INSURORS HAVE ISSUED TO THE INSURED POLICIES OF INSURANCE DESCRIBED IN ITEM 7 OF THE SCHEDULE (WHICH POLICIES INCLUDING RENEWALS OR REPLACEMENTS THEREOF, ARE HEREIN CALLED THE BASIC INSURANCE), AND WHEREAS THE INSURED HAS PAID THE PREMIUM STATED HEREIN.

NOW, THIS POLICY TO THE EXTENT AND IN THE MANNER HEREINAFTER PROVIDED, IS TO INDEMNIFY THE INSURED FOR LOSS SUSTAINED DURING THE PERIOD OF THE POLICY, SUBJECT TO THE TERMS AND CONDITIONS OF INSURANCE POLICIES SET OUT IN ITEM 7 OF THE SCHEDULE, WITH THE EXCEPTION OF LIMITS OF LIABILITY AND DEDUCTIBLE CLAUSES, OR WHERE AMENDED BY ENDORSEMENT ATTACHED HERETO.

PROVIDED THAT THE COMPANY'S LIMIT OF LIABILITY UNDER THIS POLICY IS LIMITED TO THE AMOUNT SPECIFIED IN ITEM 5 (B) OF THE SCHEDULE, BUT ONLY IN EXCESS OF AND AFTER THE INSURED, UNDER THE CONDITIONS HEREOF, HAS INCURRED DEFINITE LEGAL LIABILITY SO AS TO EXPEND THE INSURED'S RETENTION AS STATED IN ITEM 5 (A) OF THE SCHEDULE, SUBJECT IN ALL INSTANCES TO A MAXIMUM EXPENDITURE PER OCCURRENCE AS SET OUT IN ITEM 5 (C) OF THE SCHEDULE.

EXPENDITURES, AS USED IN THE FOREGOING PARAGRAPH SHALL INCLUDE ONLY PAYMENTS ACTUALLY MADE BY OR FOR THE INSURED OR FOR WHICH THE INSURED HAS DEFINITE LEGAL LIABILITY, SPECIFICALLY EXCLUDING ANY LEGAL OR ADJUSTMENT COSTS.

## CONDITIONS

1. BASIC INSURANCE OR SERVICE COMPANY

IT IS A CONDITION PRECEDENT TO THE COMPANY'S DUTY TO INDEMNIFY THAT THE INSURED HAS ENGAGED THE SERVICES OF A BASIC INSUROR OR A SERVICE COMPANY APPROVED BY THE COMPANY TO PERFORM ON BEHALF OF THE INSURED ALL INVESTIGATION AND CLAIMS ADJUSTING SERVICES THAT ARE NECESSARY TO FINALIZE ALL CLAIMS INCURRED BY THE INSURED, AND TO MAINTAIN ACCURATE RECORDS OF ALL DETAILS INCIDENT TO SUCH CLAIMS.

2. RETENTION COMPUTATION

THE ANNUAL RETENTION AS DESIGNATED IN ITEM 5 (A) OF THE DECLARATIONS IS A MINIMUM RETENTION ONLY AND IS ADJUSTABLE AS INDICATED IT ITEM 5 (A). AS THE CLOSE OF EACH ANNUAL PERIOD, THE ACTUAL AGGREGATE RETENTION SHALL BE COMPUTED BASED ON THE GROSS REVENUE REPORTED BY THE NAMED INSURED.

3. LOSS PAYMENTS

THIS POLICY IS SOLELY BETWEEN THE COMPANY AND THE INSURED AND ALL PAY-

MENTS SHALL BE MADE TO CLAIMANTS OR OTHERS BY THE INSURED IN HIS NAME, OR ON HIS BEHALF IF SO DIRECTED BY HIM.

WHEN IT HAS BEEN DETERMINED THAT THE COMPANY IS LIABLE UNDER THIS POLICY FOR PAYMENTS MADE IN EXCESS OF THE INSURED RETENTION,

(A) THE COMPANY WILL PROMPTLY REIMBURSE THE INSURED UPON RECEIPT OF A MONTHLY OR QUARTERLY STATEMENT FROM THE INSURED SHOWING THE AMOUNT OF EXCESS PAID FOR THE PERIOD, OR

(B) IN THE EVENT OF THE INSURED GOING INTO LIQUIDATION OR BEING OTHERWISE UNABLE TO MAKE PAYMENTS IN HIS OWN NAME, THE COMPANY WILL MAKE DIRECT TO CLAIMANTS OR OTHERS SUCH PAYMENTS AS WOULD OTHERWISE HAVE BEEN MADE BY THE COMPANY TO THE INSURED, AND THE INSURED AGREES THAT PAYMENT SO MADE BY THE COMPANY TO CLAIMANTS OR OTHERS SHALL BE EQUIVALENT TO PAYMENT TO THE INSURED.

4. CLAIMS

THE COMPANY SHALL NOT BE REQUIRED TO ASSUME CHARGE OF THE SETTLEMENT OR DEFENSE OF ANY CLAIM MADE OR SUIT BROUGHT OR PROCEEDINGS INSTITUTED AGAINST THE INSURED BUT RESERVES THE RIGHT TO BE ASSOCIATED WITH THE INSURED IN THE DEFENSE OF ANY SUCH CLAIM, SUIT OR PROCEEDINGS, INCLUDING APPEALS TO HIGHER COURTS WHICH, IF THE INSURED FAILS OR REFUSES TO DO SO, MAY BE PROSECUTED IN THE NAME OF THE INSURED BY THE COMPANY, IN WHICH EVENT THE LEGAL COSTS AND EXPENSES OF SUCH APPEAL SHALL BE FOR THE COMPANY'S OWN ACCOUNT, UNLESS THE INSURED'S FAILURE OR REFUSAL IS IN BAD FAITH.

5. REPORTS

THE INSURED, OR ON HIS INSTRUCTIONS THE BASIC INSUROR OR THE SERVICE COMPANY, SHALL FORWARD TO THE COMPANY THE FOLLOWING REPORTS:

(A) IMMEDIATE WRITTEN NOTICE OF ANY CATASTROPHE OR EVENT THE COST OF WHICH, ADDED TO KNOWN PREVIOUS LOSSES, IS LIKELY TO EXCEED THE INSURED'S RETENTION;

(B) A COMPLETE MONTHLY REPORT OF ALL OCCURRENCES; AND

(C) A MONTHLY TABULATION OF ALL PAYMENTS MADE AND RESERVES SET UP FOR CLAIM.

6. SUBROGATION

IF THE COMPANY BECOMES LIABLE FOR ANY PAYMENT UNDER THIS POLICY, THE COMPANY SHALL BE SUBROGATED, TO THE EXTENT OF SUCH PAYMENT, TO ALL THE RIGHTS AND REMEDIES OF THE INSURED AGAINST ANY PARTY IN RESPECT OF SUCH PAYMENT AND SHALL BE ENTITLED AT ITS OWN EXPENSE TO SUE IN THE NAME OF THE INSURED. THE INSURED SHALL GIVE TO THE COMPANY ALL SUCH ASSISTANCE IN ITS POWER AS THE COMPANY MAY REQUIRE TO SECURE ITS RIGHTS AND REMEDIES AND AT THE COM-

PANY'S REQUEST, SHALL EXECUTE ALL DOCUMENTS NECESSARY TO ENABLE THE COMPANY EFFECTIVELY TO BRING SUIT IN THE NAME OF THE INSURED.

7. SELF-INSURORS STATUS

IF APPLICABLE, THE INSURED NAMED IN THE DECLARATIONS HAS DULY QUALIFIED AS A SELF-INSUROR BY COMPLIANCE WITH THE PROVISIONS OF ANY LAWS RESPECTING SELF-INSURORS IN ALL NECESSARY STATES AND SHALL CONTINUE TO MAINTAIN SAID STATUS THROUGHOUT THE PERIOD OF THIS POLICY.

8. FINANCIAL RESPONSIBILITY

THIS POLICY DOES NOT PROVIDE PRIMARY AUTOMOBILE LIABILITY INSURANCE AND IS NOT INTENDED TO SATISFY ANY FINANCIAL RESPONSIBILITY REQUIREMENTS OF ANY STATE.

9. OTHER INSURANCE

THIS POLICY DOES NOT COVER ANY LIABILITY WHICH IS INSURED BY OR WOULD, BUT FOR THE EXISTENCE OF THIS POLICY, BE INSURED BY ANY OTHER EXISTING POLICY OR POLICIES EXCEPT IN RESPECT OF ANY EXCESS BEYOND THE AMOUNT WHICH WOULD HAVE BEEN PAYABLE UNDER SUCH POLICY OR POLICIES HAD THIS POLICY NOT BEEN IN EFFECT.

10. ARBITRATION

IF ANY DISPUTE OR CONTROVERSY SHALL RISE BETWEEN THE COMPANY AND THE INSURED WITH RESPECT TO ANY PROVISION IN THIS CONTRACT, IT SHALL BE REFERRED TO TWO ARBITRATORS, ONE TO BE CHOSEN BY EACH PARTY, AND SUCH ARBITRATORS SHALL, BEFORE ENTERING UPON THE CONSIDERATION OF ANY DISPUTE OR CONTROVERSY, IMMEDIATELY CHOOSE AN UMPIRE. THE DECISION OF ANY TWO OF THE THREE SHALL BE ABSOLUTELY BINDING UPON THE PARTIES TO THE CONTRACT, AND THE EXPENSE OF ANY SUCH ARBITRATION PROCEEDING SHALL BE SHARED BY SUCH PARTIES. SUCH ARBITRATION SHALL BE CONDUCTED AT ATLANTA, GEORGIA OR AS OTHERWISE MUTUALLY AGREED UPON.

11. DECLARATIONS

BY THE ACCEPTANCE OF THIS POLICY THE INSURED AGREES THAT THE STATEMENTS IN THE DECLARATIONS ARE HIS AGREEMENTS AND REPRESENTATIONS, THAT THIS POLICY IS ISSUED IN RELIANCE UPON THE TRUTH OF SUCH REPRESENTATIONS AND THAT THE INSURANCE EMBODIES ALL AGREEMENTS EXISTING BETWEEN ITSELF AND THE COMPANY RELATING TO THIS POLICY.

STONEWALL INSURANCE COMPANY

____________________________

AUTHORIZED REPRESENTATIVE



...NDABLE INSURANCE ASSOC... S, INC.

...SS INFORMATION ... UNDERWRITING INFORMATION

| CO. | CONTRACT | SUB LINE | CLASS | G.A. COMM. | BRK'S. COMM. | PRODUCER | STATE |
|---|---|---|---|---|---|---|---|
| | 2336 | | [illegible] | | [illegible] | [illegible] | 31 |

Renewal of [illegible]

Rewrite of

Extra Dailies

Producer: ALEXANDER AND ALEXANDER [illegible]

Certified Copies:

In favor of: [illegible], INC., ET AL. [illegible]

Address: [illegible]

Type of Coverage: [illegible]

In the amount of: $[illegible]

Term: Beginning at 12:01 A.M. on the [illegible] day of [illegible] 19[illegible]
and ending at 12:01 A.M. on the [illegible] day of [illegible] 19[illegible]
Standard time at the place of location of risks insured, and in accordance with terms and conditions of the form(s) attached and the Standard Clauses on the reverse side of this page.

Forms: At time of issuance this Policy contains a [illegible] page insuring Form and Endorsements 1 through N/A inclusive. Standard Clause [illegible] shall not apply.

SURPLUS LINES INFORMATION

CROSS REFERENCES

Premium

| Due: | At Inception | 1st Anniversary | 2nd Anniversary |
|---|---|---|---|
| PREMIUM | $[illegible] | $ | $ |
| State Tax | $ | $ | $ |
| Stamping Fee | $ | $ | $ |
| Service Fee | $ | $ | $ |
| Policy Fee | $ | $ | $ |
| TOTAL | $[illegible] | | |

ANN'L. REVIEW

ADJ. [illegible]

INST.

ENTER FIRE

ENTER QUAKE

Dated at ATLANTA, GEORGIA
this [illegible] day of FEBRUARY 19 75

RECEIVED APR 14 1975

G. ZANTHOS

MAY 13 1975

HOME OFFICE COPY

IT IS UNDERSTOOD AND AGREED THAT NO COVERAGE IS AFFORDED UNDER THIS POLICY IN RESPECT TO WORKMEN'S COMPENSATION IN THE STATE OF CALIFORNIA.

IN CONSIDERATION OF THE ABOVE IT IS UNDERSTOOD AND AGREED THAT ITEM 5. AGGREGATE INSURANCE SUBSECTION (A) "RETENTION", OF THE SCHEDULE FORMING PART OF THIS POLICY, WILL BE REDUCED BY THE LOSSES APPLICABLE TO WORKMEN'S COMPENSATION IN THE STATE OF CALIFORNIA.

SIGNED AND ACCEPTED ______________________________
NAMED INSURED

FEB 4 1976

All other Terms and Conditions remain unchanged.

Attached to and Forming Part of Policy No. 36000082

Issued To: STUDEBAKER-WORTHINGTON, INC., ET AL

Effective Date: JANUARY 1, 1975

Endorsement No.: [illegible]

STONEWALL INSURANCE COMPANY

GLA 12E(99)E474

By ______________________________

HOME OFFICE COPY

STONEWALL INSURANCE COMPANY
BIRMINGHAM, ALABAMA

# POLICY OF AGGREGATE INSURANCE

## SCHEDULE

1. INSURED: STUDEBAKER - WORTHINGTON, INCORPORATED AND ALL SUBSIDIARIES OR DIVISIONS AS MAY NOW OR HEREAFTER BE CONSTITUTED.

2. ADDRESS: 530 FIFTH AVENUE
NEW YORK, NEW YORK 10036

3. EFFECTIVE DATE: JANUARY 1, 1975

4. EXPIRATION DATE: JANUARY 1, 1976

5. AGGREGATE INSURANCE: 2.6MM

(A) RETENTION: $3,000,000 TO BE ADJUSTED ON GROSS REVENUE, AT A RATE OF $1,875 PER $1,000,000 REVENUE

(B) INSURANCE LIMIT: $11,000,000.00

(C) LOSS LIMITATION PER OCCURRENCE: $100,000 EACH OCCURRENCE, GENERAL LIABILITY AND
$100,000 EACH OCCURRENCE, AUTOMOBILE LIABILITY AND
$100,000 EACH OCCURRENCE, WORKMEN'S COMPENSATIO

6. PREMIUM: $80,000.00 FLAT ANNUAL

7. BASIC INSURANCE CARRIER OR SERVICE COMPANY: INSURANCE COMPANY OF NORTH AMERICA

(1) COMPREHENSIVE GENERAL - AUTOMOBILE LIABILITY POLICY

(2) WORKMEN'S COMPENSATION AND EMPLOYER'S LIABILITY POLICY

See End# 2+3

S-W.

STONEWALL INSURANCE COMPANY
BIRMINGHAM, ALABAMA

# POLICY OF AGGREGATE INSURANCE

THIS IS A POLICY OF AGGREGATE INSURANCE ISSUED BY THE STONEWALL INSURANCE COMPANY (HEREIN CALLED THE COMPANY) TO THE PARTY OR PARTIES NAMED IN THE DECLARATIONS MADE A PART HEREOF (HEREIN CALLED THE INSURED).

WHEREAS, CERTAIN INSURORS HAVE ISSUED TO THE INSURED POLICIES OF INSURANCE DESCRIBED IN ITEM 7 OF THE SCHEDULE (WHICH POLICIES INCLUDING RENEWALS OR REPLACEMENTS THEREOF, ARE HEREIN CALLED THE BASIC INSURANCE), AND WHEREAS THE INSURED HAS PAID THE PREMIUM STATED HEREIN.

NOW, THIS POLICY TO THE EXTENT AND IN THE MANNER HEREINAFTER PROVIDED, IS TO INDEMNIFY THE INSURED FOR LOSS SUSTAINED DURING THE PERIOD OF THE POLICY, SUBJECT TO THE TERMS AND CONDITIONS OF INSURANCE POLICIES SET OUT IN ITEM 7 OF THE SCHEDULE, WITH THE EXCEPTION OF LIMITS OF LIABILITY AND DEDUCTIBLE CLAUSES, OR WHERE AMENDED BY ENDORSEMENT ATTACHED HERETO.

PROVIDED THAT THE COMPANY'S LIMIT OF LIABILITY UNDER THIS POLICY IS LIMITED TO THE AMOUNT SPECIFIED IN ITEM 5 (B) OF THE SCHEDULE, BUT ONLY IN EXCESS OF AND AFTER THE INSURED, UNDER THE CONDITIONS HEREOF, HAS INCURRED DEFINITE LEGAL LIABILITY SO AS TO EXPEND THE INSURED'S RETENTION AS STATED IN ITEM 5 (A) OF THE SCHEDULE, SUBJECT IN ALL INSTANCES TO A MAXIMUM EXPENDITURE PER OCCURRENCE AS SET OUT IN ITEM 5 (C) OF THE SCHEDULE.

EXPENDITURES, AS USED IN THE FOREGOING PARAGRAPH SHALL INCLUDE ONLY PAYMENTS ACTUALLY MADE BY OR FOR THE INSURED OR FOR WHICH THE INSURED HAS DEFINITE LEGAL LIABILITY, SPECIFICALLY EXCLUDING ANY LEGAL OR ADJUSTMENT COSTS.

## CONDITIONS

1. BASIC INSURANCE OR SERVICE COMPANY

IT IS A CONDITION PRECEDENT TO THE COMPANY'S DUTY TO INDEMNIFY THAT THE INSURED HAS ENGAGED THE SERVICES OF A BASIC INSUROR OR A SERVICE COMPANY APPROVED BY THE COMPANY TO PERFORM ON BEHALF OF THE INSURED ALL INVESTIGATION AND CLAIMS ADJUSTING SERVICES THAT ARE NECESSARY TO FINALIZE ALL CLAIMS INCURRED BY THE INSURED, AND TO MAINTAIN ACCURATE RECORDS OF ALL DETAILS INCIDENT TO SUCH CLAIMS.

2. RETENTION COMPUTATION

THE ANNUAL RETENTION AS DESIGNATED IN ITEM 5 (A) OF THE DECLARATIONS IS A MINIMUM RETENTION ONLY AND IS ADJUSTABLE AS INDICATED IN ITEM 5 (A). AT THE CLOSE OF EACH ANNUAL PERIOD, THE ACTUAL AGGREGATE RETENTION SHALL BE COMPUTED BASED ON THE GROSS REVENUE REPORTED BY THE NAMED INSURED.

3. LOSS PAYMENTS

THIS POLICY IS SOLELY BETWEEN THE COMPANY AND THE INSURED AND ALL PAYMENTS

SHALL BE MADE TO CLAIMANTS OR OTHERS BY THE INSURED IN HIS NAME, OR ON HIS BEHALF IF SO DIRECTED BY HIM.

WHEN IT HAS BEEN DETERMINED THAT THE COMPANY IS LIABLE UNDER THIS POLICY FOR PAYMENTS MADE IN EXCESS OF THE INSURED RETENTION,

(A) THE COMPANY WILL PROMPTLY REIMBURSE THE INSURED UPON RECEIPT OF A MONTHLY OR QUARTERLY STATEMENT FROM THE INSURED SHOWING THE AMOUNT OF EXCESS PAID FOR THE PERIOD, OR

(B) IN THE EVENT OF THE INSURED GOING INTO LIQUIDATION OR BEING OTHERWISE UNABLE TO MAKE PAYMENTS IN HIS OWN NAME, THE COMPANY WILL MAKE DIRECT TO CLAIMANTS OR OTHERS SUCH PAYMENTS AS WOULD OTHERWISE HAVE BEEN MADE BY THE COMPANY TO THE INSURED, AND THE INSURED AGREES THAT PAYMENT SO MADE BY THE COMPANY TO CLAIMANTS OR OTHERS SHALL BE EQUIVALENT TO PAYMENT TO THE INSURED.

4. CLAIMS

THE COMPANY SHALL NOT BE REQUIRED TO ASSUME CHARGE OF THE SETTLEMENT OR DEFENSE OF ANY CLAIM MADE OR SUIT BROUGHT OR PROCEEDINGS INSTITUTED AGAINST THE INSURED BUT RESERVES THE RIGHT TO BE ASSOCIATED WITH THE INSURED IN THE DEFENSE OF ANY SUCH CLAIM, SUIT OR PROCEEDINGS, INCLUDING APPEALS TO HIGHER COURTS WHICH, IF THE INSURED FAILS OR REFUSES TO DO SO, MAY BE PROSECUTED IN THE NAME OF THE INSURED BY THE COMPANY, IN WHICH EVENT THE LEGAL COSTS AND EXPENSES OF SUCH APPEAL SHALL BE FOR THE COMPANY'S OWN ACCOUNT, UNLESS THE INSURED'S FAILURE OR REFUSAL IS IN BAD FAITH.

5. REPORTS

THE INSURED, OR ON HIS INSTRUCTIONS THE BASIC INSUROR OR THE SERVICE COMPANY, SHALL FORWARD TO THE COMPANY THE FOLLOWING REPORTS:

(A) IMMEDIATE WRITTEN NOTICE OF ANY CATASTROPHE OR EVENT THE COST OF WHICH, ADDED TO KNOWN PREVIOUS LOSSES, IS LIKELY TO EXCEED THE INSURED'S RETENTION;

(B) A COMPLETE QUARTERLY REPORT OF ALL OCCURRENCES; AND

(C) A QUARTERLY TABULATION OF ALL PAYMENTS MADE AND RESERVES SET UP FOR CLAIM.

6. SUBROGATION

IF THE COMPANY BECOMES LIABLE FOR ANY PAYMENT UNDER THIS POLICY, THE COMPANY SHALL BE SUBROGATED, TO THE EXTENT OF SUCH PAYMENT, TO ALL THE RIGHTS AND REMEDIES OF THE INSURED AGAINST ANY PARTY IN RESPECT OF SUCH PAYMENT AND SHALL BE ENTITLED AT ITS OWN EXPENSE TO SUE IN THE NAME OF THE INSURED. THE INSURED SHALL GIVE TO THE COMPANY ALL SUCH ASSISTANCE IN ITS POWER AS THE COMPANY MAY REQUIRE TO SECURE ITS RIGHTS AND REMEDIES AND AT THE COMPANY'S REQUEST, SHALL EXECUTE ALL DOCUMENTS NECESSARY TO ENABLE THE COMPANY EFFECTIVELY TO BRING SUIT IN THE NAME OF THE INSURED.

7. SELF-INSUROR'S STATUS

IF APPLICABLE, THE INSURED NAMED IN THE DECLARATIONS HAS DULY QUALIFIED AS A SELF-INSUROR BY COMPLIANCE WITH THE PROVISIONS OF ANY LAWS RESPECTING SELF-

INSURORS IN ALL NECESSARY STATES AND SHALL CONTINUE TO MAINTAIN SAID STATUS THROUGHOUT THE PERIOD OF THIS POLICY.

8. FINANCIAL RESPONSIBILITY

THIS POLICY DOES NOT PROVIDE PRIMARY AUTOMOBILE LIABILITY INSURANCE AND IS NOT INTENDED TO SATISFY ANY FINANCIAL RESPONSIBILITY REQUIREMENTS OF ANY STATE.

9. OTHER INSURANCE

THIS POLICY DOES NOT COVER ANY LIABILITY WHICH IS INSURED BY OR WOULD, BUT FOR THE EXISTENCE OF THIS POLICY, BE INSURED BY ANY OTHER EXISTING POLICY OR POLICIES EXCEPT IN RESPECT OF ANY EXCESS BEYOND THE AMOUNT WHICH WOULD HAVE BEEN PAYABLE UNDER SUCH POLICY OR POLICIES HAD THIS POLICY NOT BEEN IN EFFECT.

10. ARBITRATION

IF ANY DISPUTE OR CONTROVERSY SHALL ARISE BETWEEN THE COMPANY AND THE INSURED WITH RESPECT TO ANY PROVISION IN THIS CONTRACT, IT SHALL BE REFERRED TO TWO ARBITRATORS, ONE TO BE CHOSEN BY EACH PARTY, AND SUCH ARBITRATORS SHALL, BEFORE ENTERING UPON THE CONSIDERATION OF ANY DISPUTE OR CONTROVERSY, IMMEDIATELY CHOOSE AN UMPIRE. THE DECISION OF ANY TWO OF THE THREE SHALL BE ABSOLUTELY BINDING UPON THE PARTIES TO THE CONTRACT, AND THE EXPENSE OF ANY SUCH ARBITRATION PROCEEDING SHALL BE SHARED BY SUCH PARTIES. SUCH ARBITRATION SHALL BE CONDUCTED AT ATLANTA, GEORGIA OR AS OTHERWISE MUTUALLY AGREED UPON.

11. DECLARATIONS

BY THE ACCEPTANCE OF THIS POLICY THE INSURED AGREES THAT THE STATEMENTS IN THE DECLARATIONS ARE HIS AGREEMENTS AND REPRESENTATIONS, THAT THIS POLICY IS ISSUED IN RELIANCE UPON THE TRUTH OF SUCH REPRESENTATIONS AND THAT THE INSURANCE EMBODIES ALL AGREEMENTS EXISTING BETWEEN ITSELF AND THE COMPANY RELATING TO THIS POLICY.

CERTIFICATE OF CASUALTY FACULTATIVE REINSURANCE

CERTIFICATE NUMBER 0221870

NEW
PRIOR CERTIFICATE NO.

NORTH AMERICAN REINSURANCE CORPORATION
(herein called the Reinsurer)

HOME OFFICE • NEW YORK, N.Y.

33000113

ATTN: Mr. W. J. Greene, Jr.

DOES HEREBY REINSURE:

Stonewall Insurance Company, P. O. Box 7673, Atlanta, Georgia 30309
(NAME AND ADDRESS OF CEDING COMPANY)

(herein called the COMPANY) with respect to the COMPANY'S policy hereinafter described, in consideration of the payment of the premium and subject to the terms, conditions and amount of liability set forth herein as follows:

NAME OF INSURED STUDEBAKER-WORTHINGTON, INC.

ADDRESS c/o Armstead, Miller & Wallace, Nashville, Tennessee

COMPANY'S POLICY NO. 33000113 REINSURANCE PERIOD FROM 1/1/74 TO 1/1/75

DETAILS OF REINSURANCE AFFORDED:

| ITEM 1. TYPE OF INSURANCE | ITEM 2. POLICY LIMITS AND APPLICATION | ITEM 3. COMPANY RETENTION | ITEM 4. REINSURANCE ACCEPTED | ITEM 5. BASIS OF ACCEPTANCE |
|---|---|---|---|---|
| Excess Aggregate Insurance (Comprehensive General - Auto Liability - Workmen's Compensation) | $11,000,000 excess of self insured retention of $2,600,000 subject to a loss limitation per occurrence of $100,000 | 100% of the first $1,000,000 $3,000,000 of the next $10,000,000<br><br>Remainder Facultatively Reinsured | Nil of the first $1,000,000 $2,000,000 part of the next $10,000,000 | Excess of loss |

| | PREMIUM DUE DATE | PREMIUM AMOUNT | COMMISSION |
|---|---|---|---|
| ☐ FIXED CHARGE PREMIUM | 1/1/74 | $4,500.00 | |
| ☒ AUDIT PREMIUM | | | |
| AUDIT FREQUENCY Upon expiration | | | |
| COMPUTED AS FOLLOWS: At a rate to be determined. | TOTAL PREMIUM | $4,500.00 | 27.5 |

MINIMUM PREMIUM: For Reinsurance Period $ ______ For Certificate $ ______

Atlanta, Georgia
ISSUED AT

7/16/74
DATE

T. J. Lee
COUNTERSIGNED BY
T. J. Lee

F100

This Certificate is an agreement of reinsurance under which the Reinsurer indemnifies the Company with respect to its insurance liability assumed under the policy s[illegible] on the front of this Certificate subject to [illegible]llowing terms and conditions:

A. APPLICATION OF LIABILITY. The liability of the Reinsurer shall follow the terms and conditions of the Company's policy furnished to the Reinsurer at the effective date of this Reinsurance Certificate, unless otherwise specifically provided herein by endorsement made a part of this Certificate. Any change in the terms and conditions of the Company's policy subsequent to the effective date of this Reinsurance Certificate shall not increase or extend the Reinsurer's liability hereunder unless such change is made a part of this Certificate by endorsement issued by the Reinsurer.

B. RETENTION OF THE COMPANY. This reinsurance is accepted in reliance on the Company's not reducing its net interest in original policy loss or liability as determined by the amount specified in Item 3. (Company Retention). Should the Company Retention be reduced by reinsurance or otherwise without notice to the Reinsurer (except as the Company Retention may be covered by non-specific excess of loss catastrophe reinsurance applying to more than one of the Company's policies in a single event), the Reinsurer's liability for loss otherwise fully collectible hereunder shall be determined in accordance with the following:

(1) If this reinsurance is on an excess of loss basis, the Reinsurer shall in no event be liable for a larger proportion of any loss otherwise fully collectible hereunder than the percentage which the actual amount of the Company's Retention at the time of loss bears to the amount stipulated in Item 3., and there shall be no return premium to the Company on account of any such reduction in the Reinsurer's liability for loss.

(2) If this reinsurance is on a pro rata (or quota share) basis, THE COMPANY WARRANTS THAT IT WILL RETAIN as the Company Retention the amount stipulated in Item 3. (except as noted therein). If at the time of any loss the Company's actual retention shall be less than the amount stipulated in Item 3., reinsurance hereunder shall be void either from inception or, when later, the date on which the reduction took place, and the Company and the Reinsurer shall each return to the other any remittances for loss or premium made following such date.

C. COOPERATION OF THE COMPANY. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto which in any manner affect this Certificate, and shall make available for inspection and place at the disposal of the Reinsurer at reasonable times, at the offices of the Company during normal business hours, any of its records relating to this reinsurance or claims in connection therewith.

D. NOTICE OF OCCURRENCE. Prompt notice shall be given the Reinsurer by the Company of any occurrence or accident which appears likely to involve loss under this reinsurance, whether the Company considers it has an adequate defense or not.

E. DEFENSE OF CLAIMS OR SUITS. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at its own expense in the defense and control of any claim, suit or proceeding involving this reinsurance, with full cooperation of the Company. If the reinsurance hereunder is for the total policy amount, the Reinsurer shall have the right, but not the obligation, to defend or pursue any suit or claim on the Company's behalf and in its name.

F. LOSS PAYABLE. All claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, which shall be bound to pay its proportion of such settlements promptly following receipt of proof of loss in the following manner:

(1) If this reinsurance is on an excess of loss basis, the amount of the Reinsurer's liability for loss hereunder shall be its indicated proportion of the excess amount, if any, by which ultimate loss to the policy exceeds the amount or amou[illegible]s in excess of which this reinsurance attaches, after first having deducted all recoveries or recoverables (collectible or not), from any source except those from such portions of other excess of loss reinsurances which do not overlap or duplicate this coverage.

(2) If this reinsurance is on a pro rata (or quota share) basis, the amount of Reinsurer's liability for each loss shall be in the proportion that the sum reinsured hereby bears to the total sum insured by the policy at the time this Certificate becomes effective, or at the time of loss, whichever proportion is less (unless otherwise endorsed hereto).

In addition, the Reinsurer shall be bound to pay its proportion of expense, other than the Company salaries and office expenses, incurred by the Company in the investigation and settlement of claims or suits as follows:

(1) With respect to reinsurance provided on an excess of loss basis, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment.

(2) With respect to reinsurance provided on a pro rata (or quota share) basis, in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability.

The Reinsurer will also pay its proportion of court costs and interest on any judgment or award fixing the amount of the Company's insurance liability under the policy reinsured, provided the Reinsurer's prior consent to such trial proceedings has been obtained.

G. SALVAGE. The Reinsurer will be paid or credited by the Company with its proportion of salvage, i.e., reimbursement obtained or recovery made by the Company. If the reinsurance afforded by this Certificate is on an excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

All costs (other than Company salaries and office expenses) of such salvage or reimbursement shall be borne by the Company and the Reinsurer in proportion to the ultimate benefits accruing to each.

H. TAXES. The Company will be liable for all taxes (except income taxes) on business ceded to the Reinsurer under this Certificate.

I. INSOLVENCY. In the event of the insolvency of the Company, reinsurance under this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company without diminution because of such insolvency, directly to the Company or its liquidator, receiver, or statutory successor, except as otherwise provided by law. The Reinsurer shall be given written notice of the pendency of each claim which may involve the reinsurance afforded by this Certificate within a reasonable time after such claim is filed in the insolvency proceeding. It shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where the claim is to be adjudicated, any defense which it may deem available to the Company or its liquidator, receiver, or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

J. CANCELLATION. Cancellation of the policy of the Company shall constitute automatic cancellation of this Certificate. This Certificate may also be cancelled by either the Company or the Reinsurer by mailing written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. If the Company policy is cancelled, the return premium hereunder shall be proportional to the original premium returned by the Company, subject to the stipulated Certificate minimum premium. If the Reinsurer cancels, the return premium shall be on a pro rata basis with the Certificate minimum premium waived.

In Witness Whereof, the Reinsurer has caused this Certificate to be signed by its President at New York, N.Y. and countersigned by a duly authorized representative of the Reinsurer.

Henry T. Kramer

PRESIDENT

Sub # 3600000

CERTIFICATE OF CASUALTY FACULTATIVE REINSURANCE

NORTH AMERICAN REINSURANCE CORPORATION

(herein called the Reinsurer)

HOME OFFICE • NEW YORK, N.Y.

0336292
CERTIFICATE NO.

022187(0)
PRIOR CERTIFICATE NO.

ATTN: Mr. F. L. Gaunce

DOES HEREBY REINSURE: Stonewall Insurance Company c/o Dependable Insurance Associates
1201 Peachtree Street, N.E., Atlanta, Georgia 30361
(NAME AND ADDRESS OF CEDING COMPANY)

(herein called the COMPANY) with respect to the COMPANY'S policy hereinafter described, in consideration of the payment of the premium and subject to the terms, conditio amount of liability set forth herein as follows:

NAME OF INSURED STUDEBAKER - WORTHINGTON, INC.

ADDRESS 530 Fifth Avenue New York, New York 10036

COMPANY'S POLICY NO. 36 000 002 REINSURANCE PERIOD 1/1/75 (FROM) 1/1/76 (TO)

DETAILS OF REINSURANCE AFFORDED:

| TYPE OF INSURANCE ITEM 1. | POLICY LIMITS AND APPLICATION ITEM 2. | COMPANY RETENTION ITEM 3. | REINSURANCE ACCEPTED ITEM 4. | BASIS OF ACCEPTAN ITEM 5. |
|---|---|---|---|---|
| Excess Aggregate Insurance (Comprehensive General - Auto Liability - Workmen's Compensation) | $11,000,000 excess of Self Insured Retention of $3,000,000 subject to a Loss Limitation per occurrence of $100,000 | Net & Treaty<br>100% of the first $1,000,000<br>$3,000,000 part of the next $10,000,000<br>Remainder Facultatively Reinsured | NIL of the first $1,000,000<br>$2,000,000 part of the next $10,000,000 | Excess of L |

| | PREMIUM DUE DATE | PREMIUM AMOUNT |
|---|---|---|
| ☒ FIXED CHARGE PREMIUM | 1/1/75 | $4,000.00 |
| ☐ AUDIT PREMIUM | | |

AUDIT FREQUENCY

COMPUTED AS FOLLOWS: TOTAL PREMIUM $4,000.00 COMMISSION 17.5

RECEIVED JAN 28 1976

MINIMUM PREMIUM: For Reinsurance Period $

FOR CERTIFICATES

Atlanta, Ga. 9/26/75
ISSUED AT DATE

COUNTERSIGNED BY
T. J. Lee/kn

16-10M B&H 6-74

ORIGINAL

[illegible] Company with respect to its insurance liability assumed under the policy [illegible] on the front of this Certificate subject [illegible] following terms and conditions:

A. APPLICATION OF LIABILITY. The liability of the Reinsurer shall follow the terms and conditions of the Company's policy furnished to the Reinsurer as of the effective date of this Reinsurance Certificate, unless otherwise specifically provided herein by endorsement made a part of this Certificate. Any change in the terms and conditions of the Company's policy subsequent to the effective date of this Reinsurance Certificate shall not increase or extend the Reinsurer's liability hereunder unless such change is made a part of this Certificate by endorsement issued by the Reinsurer.

B. RETENTION OF THE COMPANY. This reinsurance is accepted in reliance on the Company's not reducing its net interest in original policy loss or liability as determined by the amount specified in Item 3. (Company Retention). Should the Company Retention be reduced by reinsurance or otherwise without notice to the Reinsurer (except as the Company Retention may be covered by non-specific excess of loss catastrophe reinsurance applying to more than one of the Company's policies in a single event), the Reinsurer's liability for loss otherwise fully collectible hereunder shall be determined in accordance with the following:

(1) If this reinsurance is on an excess of loss basis, the Reinsurer shall in no event be liable for a larger proportion of any loss otherwise fully collectible hereunder than the percentage which the actual amount of the Company's Retention at the time of loss bears to the amount stipulated in Item 3.; and there shall be no return premium to the Company on account of any such reduction in the Reinsurer's liability for loss.

(2) If this reinsurance is on a pro rata (or quota share) basis, THE COMPANY WARRANTS THAT IT WILL RETAIN as the Company Retention the amount stipulated in Item 3. (except as noted therein). If at the time of any loss the Company's actual retention shall be less than the amount stipulated in Item 3., reinsurance hereunder shall be void either from inception or, when later, the date on which the reduction took place, and the Company and the Reinsurer shall each return to the other any remittances for loss or premium made following such date.

C. COOPERATION OF THE COMPANY. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto which in any manner affect this Certificate, and shall make available for inspection and place at the disposal [illegible] the Reinsurer at reasonable times, at the offices of t[illegible] Company during normal business hours, any of its records [illegible]ing to this reinsurance or claims in connection therewith.

D. NOTIC[illegible] OF OCCURRENCE. Prompt notice shall be given the R[illegible] by the Company of any occurrence or accident wh[illegible]ars likely to involve loss under this reinsurance, w[illegible]e Company considers it has an adequate defense or not.

E. DEFENSE O[illegible] AIMS OR SUITS. While the Reinsurer does not undertake [illegible] investigate or defend claims or suits, it shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at its own expense in the defense and control of any claim, suit or proceeding involving this reinsurance, with full cooperation of the Company. If the reinsurance hereunder is for the total policy amount, the Reinsurer shall have the right, but not the obligation, to defend or pursue any suit or claim on the Company's behalf and in its name.

F. LOSS PAYABLE. All claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, which shall be bound to pay its proportion of such settlements promptly following receipt of proof of loss in the following manner:

(1) If this reinsurance is on an excess of loss basis, the amount of the Reinsurer's liability for loss hereunder shall be its indicated proportion of the excess amount, [illegible] by which [illegible] amount or amounts in excess of which this reinsurance attaches, after first having deducted all recoveries or recoverables (collectible or not), from any source except those from such portions of other excess of loss reinsurances which do not overlap or duplicate this coverage.

(2) If this reinsurance is on a pro rata (or quota share) basis, the amount of Reinsurer's liability for each loss shall be in the proportion that the sum reinsured hereby bears to the total sum insured by the policy at the time this Certificate becomes effective, or at the time of loss, whichever proportion is less (unless otherwise endorsed hereto).

In addition, the Reinsurer shall be bound to pay its proportion of expense, other than the Company salaries and office expenses, incurred by the Company in the investigation and settlement of claims or suits as follows:

(1) With respect to reinsurance provided on an excess of loss basis, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment.

(2) With respect to reinsurance provided on a pro rata (or quota share) basis in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability.

The Reinsurer will also pay its proportion of court costs and interest on any judgment or award fixing the amount of the Company's insurance liability under the policy reinsured, provided the Reinsurer's prior consent to such trial proceedings has been obtained.

G. SALVAGE. The Reinsurer will be paid or credited by the Company with its proportion of salvage, i.e., reimbursement obtained or recovery made by the Company. If the reinsurance afforded by this Certificate is on an excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

All costs (other than Company salaries and office expenses) of such salvage or reimbursement shall be borne by the Company and the Reinsurer in proportion to the ultimate benefits accruing to each.

H. TAXES. The Company will be liable for all taxes (except income taxes) on business ceded to the Reinsurer under this Certificate.

I. INSOLVENCY. In the event of the insolvency of the Company, reinsurance under this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company without diminution because of such insolvency, directly to the Company or its liquidator, receiver, or statutory successor, except as otherwise provided by law. The Reinsurer shall be given written notice of the pendency of each claim which may involve the reinsurance afforded by this Certificate within a reasonable time after such claim is filed in the insolvency proceeding. It shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where the claim is to be adjudicated, any defense which it may deem available to the Company or its liquidator, receiver, or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

J. CANCELLATION. Cancellation of the policy of the Company shall constitute automatic cancellation of this Certificate. This Certificate may also be cancelled by either the Company or the Reinsurer by mailing written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. If the Company policy is cancelled, the return premium hereunder shall be proportionate to the original premium returned by the Company, subject to the stipulated Certificate minimum premium. If the Reinsurer cancels, the return premium shall be on a pro rata basis [illegible]

In [illegible]

by [illegible]



CERTIFICATE OF FACULTATIVE REINSURANCE

CERTIFICATE NUMBER C-00753

INTEREMCO, INC.
666 STEAMBOAT ROAD
GREENWICH, CONNECTICUT 06830
(203) 661-0300 • TELEX 965845

FOR

**NORTH AMERICAN COMPANY FOR PROPERTY AND CASUALTY INSURANCE**

CEDING CO. AND ADDRESS

Stonewall Insurance Company
c/o Dependable Insurance Associates, Inc.
P.O. Box 7673
Atlanta, Georgia 30309

APR 14 1975

ATTENTION Mr. William Greene

## DECLARATIONS

| INSURED | STUDEBAKER-WORTHINGTON INC., ET AL | RENEWING CERTIFICATE | C-00454 |
|---|---|---|---|
| CITY | New York, New York | REPLACING CERTIFICATE | |
| COMPANY POLICY NUMBER | 36000002 | CO. POLICY PERIOD | 1/1/75 - 1/1/76 |

APR 28 1975

| | |
|---|---|
| ITEM 1 TYPE OF INSURANCE | Aggregate Insurance |
| ITEM 2 POLICY LIMITS AND APPLICATIONS | $11,000,000 excess of $3,000,000 Fund |
| ITEM 3 COMPANY RETENTION | $3,000,000 part of $11,000,000 excess of $3,000,000 Fund |
| ITEM 4 REINSURANCE ACCEPTED | $1,000,000 part of $10,000,000 excess $1,000,000 excess $3,000,000 Fund |
| ITEM 5 BASIS OF REINSURANCE | Contributing Excess |
| ITEM 6 CANCELLATION | 30 DAYS NOTICE |

| CERTIFICATE PERIOD | January 1, 1975 to January 1, 1976 | | | |
|---|---|---|---|---|
| PREMIUM THIS CERTIFICATE | $1,650.00 | ☒ FIXED | ☐ DEPOSIT | CED COMM. Net % |

| INSTALLMENTS PAYABLE | ESTIMATED PREMIUM BASE | RATE | EST. PREM. |
|---|---|---|---|
| | | | |

AUDIT PERIOD Nil    MINIMUM PREMIUM - FOR REINSURANCE PERIOD $1,650.00

INTEREMCO, INC.
REINSURANCE MANAGER FOR
**NORTH AMERICAN COMPANY FOR PROPERTY AND CASUALTY INSURANCE**

DATE April 10, 1975    JMS:jr

BY Jack M. [signature]
AUTHORIZED SIGNATURE

FORM 98 4/74

**INTEREMCO, INC.**
REINSURANCE MANAGER FOR
**NORTH AMERICAN COMPANY FOR PROPERTY AND CASUALTY INSURANCE**
(hereinafter called the Reinsurer)

In consideration of payment of the premium, and subject to the terms, conditions and limits of liability set forth herein and in the Declaration made a part hereof, the Reinsurer does hereby reinsure the ceding company named in the [illegible] in respect of the Company's Policy as follows:

## REINSURING AGREEMENTS AND CONDITIONS

A. RETENTION AND APPLICATION OF LIABILITY. The Company warrants to retain for its own account or that of its treaty and/or facultative reinsurers the amount of liability specified in ITEM 3 of the Declarations and the liability of the Reinsurer specified in ITEM 4 of said Declarations shall follow that of the Company and except as otherwise specifically provided [illegible] be subject in all respects to all the [illegible] conditions of the Company's Policy. The Company shall furnish the Reinsurer with [illegible] thereto which in any manner affect [illegible] Certificate and shall make available for inspection and place at the disposal of the Reinsurer at reasonable times any of its records relating to this reinsurance or claims in connection therewith. The terms [illegible] Certificate shall not be [illegible] changed except by written [illegible] representative of the Reinsurer.

[illegible] NOTICE OF [illegible] by the Company [illegible] waiver [illegible] of the Company shall not affect [illegible] this notice.

C. [illegible] and its representatives at its own expense in the defense and control of any claim with full cooperation of the Company.

D. LOSS PAYABLE. All claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer who shall be bound to pay its proportion of such [illegible] and in addition thereto, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, its proportion of expenses, other than Company salaries and office expenses, incurred by the Company in the investigation and settlement of claims or suits and, with the prior consent of the Reinsurer to trial court proceedings, its proportion of court costs and interest on any judgement or award. Payment of its proportion of loss and expense paid by the Company will be made by the Reinsurer promptly following receipt of proof of loss.

E. [illegible] by the Company with [illegible] salvage, [illegible] reimbursement obtained or recovery made by the Company, less actual cost (excluding Company salaries and office expenses) of obtaining such reimbursement or making such recovery. If the reinsurance afforded by this Certificate is on an excess of [illegible] basis, salvage shall be applied in the [illegible] order in which liability [illegible]

F. TAXES. The Company will be liable for all taxes, other than income taxes, on premiums ceded to the Reinsurer under this Certificate.

[illegible] In the event of the insolvency of the Company, the [illegible] provided [illegible] this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company under the policy(ies) reinsured, without diminution because of such insolvency, directly to the Company [illegible] successor. The Reinsurer shall be given written notice of the pendency of each claim against the Company [illegible] within a reasonable time after such claim is filed in the insolvency proceedings. The Reinsurer shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defenses which [illegible] deem available to the Company or its receiver, liquidator or statutory successor. The expense thus incurred by the Reinsurer shall be [illegible] subject to Court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as the result of the defense undertaken by the Reinsurer.

H. NUCLEAR EXCLUSION. This Certificate is subject to the standard Nuclear Incident Exclusion Clause — Liability — Reinsurance.

I. CANCELLATION. Cancellation of the Policy of the Company shall constitute automatic pro rata cancellation of this Certificate. The Certificate may also be cancelled by either party giving written notice of not less than the number of days specified in ITEM 6 of the Declarations to the other party. If cancelled by the Company, without simultaneous cancellation of the Policy, adjustment of premium shall be on the short rate basis. If cancelled by the Reinsurer, adjustment of premium shall be on the pro rata basis. Short rate and pro rata cancellations shall be based upon final adjusted premiums.

**In Witness Whereof**, Interemco, Inc. has caused this Reinsurance Certificate to be signed by its President and Secretary at Greenwich, Conn. The same shall not be binding upon the Reinsurer unless countersigned by an authorized representative of the Reinsurer.

Stephen E. Edwards
Secretary

David [illegible]
President

BURT AND SCHELD INC.

REINSURANCE CERTIFICATE

REINSURANCE CEDED TO AND ASSUMED BY

NORTH AMERICAN COMPANY

FOR PROPERTY AND CASUALTY INSURANCE

THRU

BURT AND SCHELD, INC. - FACULTATIVE MANAGERS

146 SOUTH ATLANTIC AVENUE, ORMOND BEACH, FLORIDA 32074

№ 2697

Mr. William J. Greene, Jr.
Dependable Insurance Associates, Inc.
P. O. Box 7673
Atlanta, Georgia 30309

ACCOUNTING CODE F1125

CEDING COMMISSION 17½ %

1. NORTH AMERICAN COMPANY For Property And Casualty Insurance (herein called the Reinsurer) does hereb Reinsure

Stonewall Insurance Company Birmingham, Alabama

CEDING COMPANY

(herein called the Company) in respect of the Company's policy hereinafter described, in consideration of the payment of the p mium and subject to the terms, conditions and amount of liability set forth herein, as follows:

2. Name And Address Of Insured: Studebaker - Worthington, Inc., etal. New York, New York

3. Policy No.: 36 000 002 Effective From: January 1, 1975 To: January 1, 1976
(12:01 A. M. STANDARD TIME AT THE ADDRESS OF THE INSURED)

4. Reinsurance Period: Effective From: January 1, 1975 To: January 1, 1976
(12:01 A. M. STANDARD TIME AT THE ADDRESS OF THE INSURED)

5. DETAILS OF REINSURANCE AFFORDED:

| SECTION I TYPE OF INSURANCE | SECTION II POLICY LIMITS AND APPLICATION | SECTION III COMPANY RETENTION | SECTION IV REINSURANCE ACCEPTED | SECTION BASIS OF ACCEPTANC |
|---|---|---|---|---|
| Excess Aggregate Compensative General and Automobile Liability including Workmen's Compensation and Employers' Liability | $11,000,000 excess 3,000,000 aggregate loss fund | Various | $2,000,000 part of 10,000,000 excess 1,000,000 excess 3,000,000 | Contribut: Excess of Loss |

RECEIVED MAY 1 1975

6. Reinsurance Premium Computation

| PREMIUM BASIS | ESTIMATED EXPOSURE | RATE | ESTIMATED PREMIUM |
|---|---|---|---|
| Flat | | | |

Deposit Premium $ 4,000.00 Minimum Premium $ 4,000.00

PREMIUM IF PAID IN INSTALLMENTS

| EFFECTIVE DATE | 1ST ANNIVERSARY | 2ND ANNIVERSARY | TOTAL PREMIUM | |
|---|---|---|---|---|
| | | | | |

7. Audit Period: None

BURT AND SCHELD, INC.

[signature]

AUTHORIZED SIGNATURE

SEE BACK OF CERTIFICATE FOR ADDITIONAL TERMS AND CONDITIONS.

The Company warrants to retain for its own account, subject to other Reinsurance, the amount of liability specified in Section III of 5 above, and the liability of the Reinsurer specified in Section IV of 5 above shall follow that of the Company and except as otherwise specifically provided herein, shall be subject in all respects to all the terms and conditions of the Company's policy. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto which in any manner affect this certificate, and shall make available for inspection and place at the disposal of the Reinsurer or Burt and Scheld, Inc. at reasonable times any of its records relating to this reinsurance or claims in connection therewith.

Prompt notice shall be given to the Reinsurer, thru Burt and Scheld, Inc., by the Company of any occurrence or accident which appears likely to involve this reinsurance and while the Reinsurer does not undertake to investigate or defend claims or suits it shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at its own expense in the defense and control of any claim, suit or proceeding involving this reinsurance with the full cooperation of the Company.

All claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, who shall be bound to pay its proportion of such settlements, and in addition thereto, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, its proportion of expenses, other than Company salaries and office expenses, incurred by the Company in the investigation and settlement of claims or suits and, with the prior consent of the Reinsurer to trial court proceedings, its proportion of court costs and interest on any judgment or award.

Payment of its proportion of loss and expense paid by the Company will be made by Burt and Scheld, Inc., for the Reinsurer, to the Company promptly following receipt of proof of loss.

The Reinsurer will be paid or credited by the Company with its proportion of salvages, i. e., reimbursement obtained or recovery made by the Company, less the actual cost, excluding Company salaries and office expenses, of obtaining such reimbursement or making such recovery. If the reinsurance afforded by this Certificate is on an excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

The Company undertakes not to claim any deduction in respect of the premium hereon when making tax returns, other than Income or Profits Tax returns, to any State or Territory of the United States or to the District of Columbia.

In the event of insolvency of the Company, the terms of this Certificate are amended to conform to the statute of any state of the United States having jurisdiction to the extent that such reinsurance as is afforded hereunder may be credited to the Company as an admitted asset or deduction from liability, it being understood that, subject to such amendment, the Reinsurer may avail itself of any other provision of any such statute applicable.

Should an irreconcilable difference of opinion arise as to the interpretation of this Contract, it is hereby mutually agreed that, as a condition precedent to any right of action hereunder, such difference shall be submitted to arbitration, one arbiter to be chosen by the Company, one by the Reinsurer, and an umpire to be chosen by the two arbiters before they enter upon arbitration. In the event that either party should fail to choose an arbiter within sixty days following a written request by the other party to enter upon arbitration, the requesting party may choose two arbiters who shall in turn choose an umpire before entering upon arbitration. Each party shall present its case to the arbiters within sixty days following the date of their appointment. The decision of the arbiters shall be final and binding upon both parties, but failing to agree they shall call in the umpire and the decision of the majority shall be final and binding upon both parties. Each party shall bear the expense of its own arbiter, and shall jointly and equally bear with the other the expense of the umpire and of the arbitration. In the event that the two arbiters are chosen by one party, as above provided, the expense of the arbiters, the umpire, and the arbitration shall be equally divided between the two parties.

Any such arbitration shall take place at New York, N. Y., unless some other location is mutually agreed upon by the two parties in interest.

Cancellation of the Ceding Company's policy shall constitute automatic cancellation of this Certificate and the Reinsurance provided by same. Cancellation may also be accomplished on a pro-rata basis by either the Ceding Company or its Representative, or Burt and Scheld, Inc., mailing or delivering to the other written notice stating when such cancellation shall be effective, except that when cancellation is instituted by Burt and Scheld, Inc., the effective date shall not be prior to thirty (30) days from the date of the notice.

The terms of this Certificate shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

In witness whereof, the Reinsurer has caused this Certificate to be signed by its authorized representative.

## NOTICE

PREMIUMS, COPIES OF POLICIES & ENDORSEMENTS, NOTICES & PROOFS OF LOSS, SALVAGES & RECOVERIES, NOTICES OF CANCELLATION AND ALL COMMUNICATIONS OF ANY KIND IN CONNECTION WITH THIS CERTIFICATE SHALL BE TRANSMITTED TO THE REINSURER THRU

**BURT AND SCHELD, INC.**
**146 SOUTH ATLANTIC AVENUE**
**ORMOND BEACH, FLORIDA 32074**

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Stonewall Insurance Company

**DEFENDANTS**
Swiss Reinsurance America Corporation

**(b)** County of Residence of First Listed Plaintiff Middlesex, MA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant ____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number) 728-0050
Kevin O'Connor & Michael Batson
Hermes, Netburn, O'Connor & Spearing, P.C.
111 Devonshire St, Boston, MA 02109

Attorneys (If Known)
Not known

05 CV 11797 MLW

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☒ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**): 28 USC,sec.1332(a)
Brief description of cause: The Plaintiff seeks to recover paid losses under applicable reinsurance contracts.

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
**DEMAND $** $1,126,715.22
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ____ DOCKET NUMBER ____

DATE 8/31/05
SIGNATURE OF ATTORNEY OF RECORD [signature]

**FOR OFFICE USE ONLY**

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) Stonewall Insurance Company v. Swiss Reinsurance Company America

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

- [ ] I. 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.
- [ ] II. 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950. *Also complete AO 120 or AO 121 for patent, trademark or copyright cases
- [X] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.
- [ ] IV. 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.
- [ ] V. 150, 152, 153.

05cv11797MLW

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES [ ] NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

YES [ ] NO [X]

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES [ ] NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES [ ] NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

YES [X] NO [ ]

A. If yes, in which division do all of the non-governmental parties reside?

Eastern Division [X] Central Division [ ] Western Division [ ]

B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

Eastern Division [ ] Central Division [ ] Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

YES [ ] NO [ ]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME Kevin J. O'Connor, Esq.

ADDRESS Hermes, Netburn, O'Connor & Spearing, P.C.

TELEPHONE NO. 111 Devonshire St., Boston, MA 02109 (617) 728-0050